

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | BK. No. SA 02-16187 TA |
| QPS, Inc. | Adv. No. SA 04-01628 TA |
| | Chapter 11 |
| Debtor. | |
| DAVID GOTTLIEB, Disbursing Agent for the Estate of QPS, Inc., | **MEMORANDUM OF DECISION AFTER TRIAL** |
| Plaintiff, | |
| v. | Date: August 15, 2006<br>Time: 10:00 a.m.<br>Place: Courtroom 5B |
| DIGITAL PERIPHERAL SOLUTIONS, INC., RAJEEV SHARMA AND PRITI SHARMA | |
| Defendants | |

Trial of this matter was conducted August 15, 2006. All proffered exhibits were received in evidence. The direct testimony of the witnesses was received in evidence by declaration, although certain paragraphs were received for the limited purposes as described on the record. Cross examination and re-direct testimony during the trial was also received from each of the four witnesses. The Court was also aided by the "Joint Pre-

trial Order" entered March 1, 2006, the "Opposition to Plaintiff's Motion for Partial Summary Judgment..." filed December 21, 2005, the "Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment" entered February 13, 2006, the "Stipulation to Extend Deadline..." filed November 3, 2004 and as well by the post trial briefs submitted by both sides.

**1. Background Facts**

A brief recital of the pertinent facts, most of which are not disputed, might be helpful. Plaintiff David Gottlieb is the disbursing agent on behalf of the estate of the Debtor ('the disbursing agent"). On January 14, 2003 the Court entered its order approving the sale of substantially all of Debtor's assets to defendant Digital Peripheral Solutions, Inc. ("DPS"). As part of the sale agreement DPS agreed to pay $150,000 to the Committee of Creditors memorialized by a Note and Security Agreement signed by DPS. [Exhibits 1 and 2, respectively] The Note has a schedule of payments attached which provides for monthly payments of $12,500 starting February 15, 2004. The Note has no attorney's fees clause and does not bear interest. The Committee is also the "secured party" under the terms of the Security Agreement. The Security Agreement at its paragraph 7.8 does contain an attorney's fees clause. Under the plan of liquidation confirmed December 1, 2003, the Note and Security agreement were assigned to the disbursing agent.

DPS breached its obligations under the Note and Security Agreement by failing to make the payments due there under for any of the months commencing February 2004 through November 1, 2004. The disbursing agent commenced this action for collection of the obligation by complaint filed September 9, 2004. [Exhibit B] DPS as well as individual defendants Bhuvan Chawla, Rajeev Sharma and Pritti Sharma are all named in the

2

complaint. Pritti Sharma is the president of DPS and Mr. Chawla is apparently the 100% shareholder of DPS. Bhuvan Chawla was dismissed without prejudice prior to trial. However defendants DPS and the Sharmas remained as defendants as of the trial on all counts except the Sixth Claim for Relief, Breach of Fiduciary Duty, in which only the Sharmas are named. The Disbursing Agent through counsel announced after trial had commenced that he would not be proceeding against the Sharmas on any of the claims.

**2. Disputed Communications Between October 19 through November 8, 2004**

This case comes down to a determination of what occurred between the parties in a series of oral, written and e-mail communications between October 19 and November 19, 2004, and of what legal significance each of those events assumes as a matter of law. It is admitted that defendant Pritti Sharma spoke by telephone with attorney Laura Portillo of Brinkman & Portillo, P.C., counsel for the plaintiff, on October 19. The exact dialogue between the parties is disputed. The version as appears in Ms. Portillo's direct testimony by declaration follows:

> ¶ 7. I had a telephone conference with defendant Priti Sharma on October 19, 2004. ¶ 8. During that telephone conference I discussed with Priti Sharma procedural matters, including the deadline to file an answer or other responsive pleading, and substantive matters, including the factual basis for the adversary action. ¶9. Priti Sharma told me that she did not have the ability to pay the money owed under the contract and that she would need to obtain funding. ¶10. I told her to call back when she would be able to pay the amounts owing. ¶11 I did not make an offer of settlement during the telephone call."

3

Although Ms. Portillo denies that settlement was offered, apparently it is conceded that at least the issue of inability to make payment did come up.

The version of the conversation as reported in Ms. Sharma's declaration specifically incorporates the issue of settlement: "I spoke to Laura Portillo on Oct. 19, 2004 and she and I agreed that if DPS paid the payment due through 10/15/04 that she would withdraw the complaint for collection...." Declaration of Pritti Sharma, ¶ 8

Apparently another conversation occurred the next day, October 20, this time between Ms. Sharma and Ms Erickson, another lawyer at Brinkman Portillo. Ms. Sharma's version of that conversation was as follows: "On 10/20/04 I called Tina Erickson to discuss the payments and terms of settlement of the collection action. I state [sic] that Portillo and I had agreed that DPS would pay 125,000 and perhaps the full $150,000 if that would settle the case. She stated she had discussed the settlement with Portillo and would prepare the document." Declaration of Pritti Sharma, ¶ 9. No counterpart of this alleged conversation appears in Ms. Erickson's declaration. However, the Court does note that a time entry for October 20, 2004 appears in the billing records of Brinkman Portillo P.C. [Exhibits C and 6] under the initials of Ms Erickson, as follows:

> Telephone conference with Pritti Sharma regarding revised payment schedule; draft letter to Sharma regarding arrangement of payments and *terms of settlement* of suit. (emphasis added)

Although the cross examination of Ms. Erickson did not elicit any admission that a discussion of settlement had indeed occurred on October 20, despite the description in the billing entry, it seems to the Court very likely that, given the preceding alleged discussion between Ms. Portillo and Ms. Sharma, and given that admittedly *something* was discussed

4

between Ms Erickson and Ms. Sharma the very next day, that the issue of settlement probably did come up, particularly given that the time entry from Ms Erickson was for *half an hour*.

The parties apparently agree that a further telephone discussion occurred between Ms. Erickson and Ms. Sharma on October 26 regarding an extension of time to file an answer. See, Declaration of Sharma ¶10; Declaration of Erickson. ¶s 4 and 5; time entries for October 26, Exhibits C and 6. The Court has also reviewed the "Stipulation to Extend Deadline for Filing an Answer; and Order Thereon" filed November 3, 2004. This shows a signature of Ms Sharma on behalf of DPS dated October 27, 2004, and an undated signature of Ms. Erickson, but given that the document was prepared by Brinkman Portillo, PC, we can infer that it was in fact prepared on or about October 26. The penultimate sentence of the Stipulation is illustrative: "The Parties seek the foregoing extension of time in order to afford the Parties an opportunity to resolve this matter consensually and avoid incurring unnecessary costs of litigation." Therefore, while the material details may not have been agreed, the Court finds that the issue of settlement was already in discussion between the parties as of October 27, 2004. The extension to respond per the stipulation was to November 5, 2004.

Another telephone conference occurred on November 4, 2004. Ms Sharma reports that she called Ms. Erickson to "tell her I had the full $150,000 ready to wire but needed wire instruction and a letter of release. Erickson said she would get the instructions and release. At no time did she say to me there was no deal of $150,000 payment for a release of all claims." Declaration of Pritti Sharma, ¶ 11. Ms. Erickson's version of the call appears in her declaration: "Pritti Sharma called BP's office and spoke with me on

5

November 4, 2004. Pritti Sharma told me she had obtained a loan to pay $150,000 to the Disbursing Agent and asked me for the wire transfer information to BP's trust account so that she could make a payment of $150,000. I did not have the wire transfer information and told her that I would email the information to her at a later time." Declaration of Christina Erickson, ¶ 7   Ms Erickson testified that she did not tell Ms. Sharma during the November 4 conference the action had been settled. Declaration of Christina Erickson, ¶ 10. However, the time entry for Ms. Erickson shows that she had a "conference with TE and LJP regarding negotiations of DPS note payment" on November 4 and another entry of 1 hour twenty minutes that same date reads: "Draft *stipulation to settle*; phone call from Pritti Sharma." *Emphasis added* [Exhibits "C" and "6"] The testimony was unclear as to whether the "conference with TE and LJP (Ms. Portillo)" occurred before or after the call on the same date from Ms. Sharma. What is reasonably clear is that at least at some point on Nov. 4, Ms. Erickson felt a settlement was enough in prospect that she spent over an hour that day preparing a settlement document. According to her direct testimony, Ms Erickson presented the draft stipulation to Ms. Portillo on Nov. 4th, but she was instructed "to keep the drafted stipulation in the file for future use." Declaration of Christina Erickson, ¶ 12; Declaration of L. Portillo, ¶ 14. Importantly, there is no testimony that Ms. Erickson was instructed on Nov. 4th (or indeed at any time) to inform Ms. Sharma that a deal had not been reached nor, apparently, did Ms. Erickson ever contact Ms. Sharma to that effect.

Ms Sharma then sends an email to Ms. Erickson on Nov. 5th:

> I called you yesterday November 4th to inform you that I am ready to wire the funds to you, were [sic] suppose to send me the letter of release and wire transfer instruction and today is the 5th of November last day for us to make

6

the payment according to the court papers, we have arranged the funds to be transferred to you as promised however we do need some kind of release letter from you that you will withdraw the complain [sic] and the wire instruction so we can send the wire transfer. Exhibit "9".

Ms. Erickson acknowledges receipt but testifies she did not respond to this email. Declaration of Christina Erickson. ¶14. Nor is there any indication from any of the other declarations or testimony that anyone from Brinkman Portillo, PC responded to the November 5 email. This silence is significant because the email makes clear that Ms. Sharma was under the impression that a settlement had been reached and that a release was expected in return for payment.

Ms Sharma testified she again spoke to Ms. Erickson by telephone on November 8:

...and told her that since I did not receive the wire instructions and release that I would send the check with a letter explaining that the $150,000 was payment in full. She stated to me that was fine and apologized for not sending the instructions and release. Erickson stated I was not to be concerned about the lack of a response form Portillo and to send the letter and check, that she would let Portillo know it was coming." Sharma Declaration, ¶ 12.

No reference is made to this November 8th conversation in Ms. Erickson's declaration but, interestingly, a time entry does appear on the billing records "Telephone conference with Pritti Sharma regarding negotiation and settlement." Exhibits "6"and "C."

7

### 3. The November 9 letter

The foregoing represents, in the main, disputed versions of what occurred in various telephone conversations. The Court believes that it is unnecessary to make factual findings regarding the specifics beyond the general findings that (a) the issue of settlement had come up; (b) DPS had mentioned a specific amount, $150,000 as full settlement and in return for $150,000 DPS expected a release; and (c) at the critical juncture there was only silence from counsel for the Disbursing Agent. These findings serve as background. The reason specifics are unnecessary is that the following largely speaks for itself.

On November 9 DPS through Ms. Sharma sent a letter to Brinkman Portillo, PC which apparently enclosed a check for $150,000. Exhibits "7" and "8." There is no dispute that the letter was received and read by all of Daren Brinkman, Laura Portillo and, at some point, by Christina Erickson, each of whom is indicated as an addressee. The letter provides in pertinent part:

> Enclosed please find Check No. 2234 for $150,000 *as payment in full to the bankruptcy estate of QPS, Inc. arising from the purchase of assets on January 14, 2003....During our phone conversation on October 19, 2004, Ms. Laura Portillo agreed that if DPS, Inc. would pay all the payments due through October 15, 2004, you would then *withdraw the complaint*....
>
> On November 4, I had arranged to make payment as promised and I called your office and asked to speak to Laura Portillo to get wire instructions so that I might transfer the funds in a timely manner. Tina told me that she would email me the bank wire instruction but I have still not received any such instructions from her. Since then I have I have [sic] sent an email and

8

made multiple phone calls requesting to talk to Laura Portillo. Each time I was told that she would call me back. I have left my office number as well as my cell phone number, but I have still not heard back from her.

Even though I was told by Tina that Brinkman Associates [sic] will not take any further action and not to worry about not having received a response from Laura, we are concerned and have therefore decided to send *the enclosed check for $150,000 as payment in full of all amounts due in the past as well as prepayment of all amounts due in the future*, to include the final payment due on January 25, 2004.

As per our phone agreement on October 19, 2004, I have complied by making payment. *I would appreciate your compliance with our agreement by withdrawing your case immediately*, and notifying me that you have done so... (emphasis added) Exhibit "7."

According to Ms. Sharma, the $150,000 was not available at the time in the assets of DPS, but had to be borrowed from her family which still has not been repaid. Declaration of Pritti Sharma, ¶ 14. Significantly, there is no evidence that anyone from Brinkman Portillo, PC contacted Ms. Sharma in response to the November 9 letter to tell her that an agreement had not been reached. Instead, the check was immediately deposited in Brinkman Portillo's trust account and cleared the bank November 15, 2004. Sharma declaration ¶15 and 16. Apparently, the first communication in reply to the November 9 letter is a November 19 email from Daren Brinkman to counsel for DPS wherein acknowledgment of the payment is made but citation is also made to the attorneys fees clause in the Security Agreement. Exhibit "4".

9

### 4. Legal Issues

#### A. The Affirmative Defense of Accord and Satisfaction

Plaintiff argues in his concluding brief that as a matter of procedure the affirmative defense of accord and satisfaction cannot be raised or considered because the Joint Pretrial Order confines the issues to the affirmative defenses of release, waiver and estoppel, as appear at its page 10. The Court disagrees that "release" is a "completely different legal theory" from that of "accord and satisfaction." Nor does the Court believe that attaching formalistic legal labels to affirmative defenses is appropriate or helpful under these circumstances.

The Court finds that "accord and satisfaction" is a form of "release" which borrows from the doctrines of both estoppel and waiver. See, *Jersey Island Dredging Co. v. Whitney*, 149 Cal. 269, 86 P. 509, 511 (1905); *McAllister v. Drapeau*, 14 Cal.2d 102, 111 (1939); *Landis v. Morissey*, 69 Cal. 83, 86 (1886). However, even if that were not true, Plaintiff cannot succeed in keeping the legal doctrine of accord and satisfaction away from consideration here, particularly considering that the Joint Pretrial Order specifically lays out the elements of accord and satisfaction when describing those disputes which remain to be tried at its page 9:

> ¶E. Whether Priti Sharma and counsel for the Plaintiff had an agreement that the Plaintiff would waive or release its right to collect anything more than $150,000 for all claims contained in the adversary complaint.¶ J. Did Plaintiff endorse and deposit the $150,000 check which accompanied the November 9 letter. ¶ L. Whether BP responded to Ms. Sharma from November 9, 2004 to November 18, 2004.

10

*See, Russell v. Riley & Peterson, et al.*, 82 Cal. App. 728, 736 (1927). The fact that the label "accord and satisfaction" was not used is of no consequence.

Plaintiff cannot seriously argue surprise since the same facts and evidence as underly all of the waiver, estoppel and release defenses likewise apply to accord and satisfaction. Moreover, the pleadings can and should be liberally amended to conform to proof, absent a showing of prejudice. Fed. Rule Bankr. Proc. 7015; *See e.g. Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*, 708 F. 2d 385, 396 (9th Cir. 1983). Lastly, Defendant correctly points out that "accord and satisfaction" was presented in opposition to the Summary Judgment motion filed December 21, 2005 by reference not only to the label "accord and satisfaction" but also to Cal. Civ. Code §1526 (c), the California statute that governs the accord and satisfaction defense. *See*, Defendants' Opposition to Plaintiff's Motion For Partial Summary Judgment, p. 5:28 to 6:4. The Summary Judgment was denied in part by the "Order Granting in Part and Denying in Part..." entered February 13, 2006 specifically so the defenses raised by the facts and circumstances as outlined above could be presented at trial. The Court finds that there is no showing of prejudice and the Answer can and should be amended to conform to proof, if that step is even necessary since the underlying elements of accord and satisfaction, if not the label, are so interwoven within the paragraphs of the Joint Pretrial Order as cited above.

### B. Was an Accord and Satisfaction Proved?

Cal. Civ. Code § 1521 defines an "accord and satisfaction" as follows:

> An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to

accept is entitled.

Cal. Civ. Code § 1526(a) and (c) provide:

> (a) Where a claim is disputed or unliquidated and a check is tendered by the debtor in settlement thereof in full discharge of the claim, and the words "payment in full" or other words of similar meaning are notated on the check or draft, the acceptance of the check or draft does not constitute an accord and satisfaction if the creditor protests against accepting the tender in full payment by striking out or otherwise deleting that notation or if the acceptance of the check or draft was inadvertent or without knowledge of the notation....
>
> (c) Notwithstanding subdivision (a), the acceptance of a check or draft by a creditor constitutes an accord and satisfaction when the check or draft is issued pursuant to or in conjunction with a release of claim.

Cal. Civ. Code § 1526 has been held to have been superseded, as to discharge of an unliquidated claim or a claim subject to bona fide dispute by tendering a negotiable instrument as full satisfaction of the claim, by Cal. Com. Code § 3311. *See, Woodridge v. J.F.L. Electric, Inc.*, 117 Cal. Rptr. 2d 771, 96 Cal, App. 4th Supp. 52 (2002). Section 3311 provides:

> (a) If a person against whom a claim is asserted proves that (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim (2) the amount of the claim was unliquidated or subject to a bona fide dispute and (3) the claimant obtained payment of the instrument, the following subdivisions apply:

12

(b) Unless subdivision (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument *or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.*

(c) Subject to subdivision (d), a claim is not discharged under subdivision (b) if either of the following applies:

(1) The claimant, if an organization, proves that (A) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (B) the instrument or accompanying communication was not received by the designated person, office, or place.

(2) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with subparagraph (A) of paragraph (1).

(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility

13

with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim. (emphasis added).

The elements of Cal. Com.l Code § 3311 (as well as of Cal. Civ. Code § 1526(a) and (c)) are all met here. Certainly it was proved that the amount of the total obligation was unliquidated or disputed as of Nov. 9, 2004; if not true of the principal of the obligation this was clearly so as to any claim for fees. An instrument [Exhibits "A" and "8"] was tendered to the claimant *in full satisfaction*, by "accompanying written communication", i.e. a cover letter [Exhibit "7"] in which the tender was expressly and conspicuously conditioned as full satisfaction of *all* obligations. Moreover, the Court has seen no evidence suggesting that Cal. Com. Code § 3311 subsection (d) should not apply, i.e. the agents for the claimant, Brinkman Portillo, PC knew that the tender was in full satisfaction of the claim. This is the only reasonable interpretation of the language of the November 9 letter wherein it is mentioned twice that the payment of $150,000 was intended as "payment in full" and in the second reference it is made even more clear that "in full" includes "of all amounts due in past as well as prepayment of all amounts due in the future..." Moreover, it was also made clear in the November 9 letter that withdrawal of the complaint was expected in return. Nor can it be reasonably said that the communication was not made "within a reasonable time before the collection of the instrument was initiated..." Similarly, the provisions of Cal. Civ. Code § 1526(a) and (c) are also met since the check was tendered in full satisfaction of a disputed or unliquidated claim, or in conjunction with a release, and there is no evidence of the requisite striking out of language or protest against same before the check was cashed.

14

Plaintiff argues that he was privileged to remain silent, cash the check notwithstanding the clear terms of the conditional tender outlined above and then only raise the further issue of fees after collection was in hand. Argument was also offered to the effect that the Brinkman Portillo lawyers owed no "duty" to the Defendants to articulate to them that, in Plaintiff's view, no settlement had been reached. Plaintiff's assumptions were grievously in error. While it might be true that Plaintiff's lawyers owe no duty to educate Defendants, it does not follow that Plaintiff was privileged to simply ignore the conditional nature of the tender and cash the check. This is an almost classic case of an accord and satisfaction. Where it is made clear that a tender is made in full satisfaction of a disputed or unliquidated claim, if the obligee receiving the tender cashes the check he is presumed in law to have "accepted", an accord is reached thereby and the obligation is extinguished upon payment of the check. *Thompson v. Williams*, 211 Cal. App. 3d 566, 571-74 (1989); *Potter v. Pacific Coast Lumber Co.*, 37 Cal. 2d 592 (1951); *Robertson v. Robertson*, 34 Cal. App. 2d 113 (1939); *Edgar v. Hitch*, 46 Cal. 2d. 309 (1956).

Plaintiff may argue that there was no "bona fide" dispute since the terms of the Note are very straightforward, and/or that no consideration was received for extinguishment of the debt. The dispute does not need a solid foundation to be "bona fide"; it is enough if the dispute is honest and not fraudulent. *Thompson*, 211 Cal. App. 3d at 573. Ms. Sharma testified as to the precarious financial condition of DPS and that it did not have nearly this kind of money to make the payments due under the Note. Moreover, there is evidence in the record to suggest that this shaky financial condition was made known to Ms. Portillo, as is reflected in paragraphs 9 and 10 of the Portillo declaration and to Ms. Erickson as well, as reflected in paragraph 7 of the Erickson Declaration. Further, fees of an additional

15

$35,000+ would certainly not have been a "liquidated" obligation nor an agreed amount as of November 9, 2004. While it is doubtful that consideration even needs to be separately proven in order for an accord and satisfaction based on a writing to occur [Cal. Civ. Code §1524], there would be such consideration here since the insolvency of the obligor can provide consideration for an accord and satisfaction. *See, Cloyne v. Levy*, 26 Cal. App. 637 (1915); *Baird v. Smith*, 7 Cal. App. 2d 597 (1935).

**C. Attorneys' Fees**

DPS is a party to the Security Agreement and, since it is also the prevailing party hereunder, it is entitled to its reasonable attorneys' fees incurred in the breach of contract cause of action. Cal. Civ. Code § 1717. Although Priti and Rajeev Sharma are not parties to the contract, inexplicably they were named as defendants in the Second Claim for Relief and remained so until after trial had begun. Moreover, as a "prevailing party" a non-signatory can be entitled to attorneys' fees even if the decision rests on the finding that no contract exists. *Hsu v. Abbara*, 9 Cal. 4th 863, 870 (1995); *Manier v. Anaheim Business Center, Co.*, 161 Cal.App.3d 503, 506-509 (1984). The Joint Pre-Trial Order at ¶ G, page 9, makes clear that total attorneys fees and costs incurred by counsel for Defendants on behalf of Defendants from September 9, 2004 through trial remained as a triable issue. *See also*, ¶ F, page 10.

Plaintiff's citation to *Bradley v. Hortonville Vigilantes*, 66 F.R.D. 605 (E.D. Wis. 1975) is wholly inapposite. That was not a case involving either a contract nor attorneys fees, but only involved a sheriff who was dismissed at the pleading stage and denied costs.

Moreover, since the Plaintiff chose to put the Sharmas through all of the worry and inconvenience of having to go to trial, it might appear just and proper that the Sharmas

16

recover their fees, and that a dismissal *after trial had commenced* should not deprive them of "prevailing party" status. Fortunately for Plaintiff, California has a strong policy favoring settlement precluding an award of fees and costs where there has been a voluntary dismissal of a claim. *See, Intl. Industries, Inc. v. Olen*, 21 Cal.3d 218, 223 (1978). The *Olen* holding was later codified by the addition of (b)(2) to Cal. Civ. Code § 1717, which provides:

> Where an action has been voluntarily dismissed or dismissed pursuant to settlement of the case, there shall be no prevailing party for purposes of this section.

Subsection (b)(2) does not require that the dismissal be entered before trial. *D&J, Inc. v. Ferro Corp.*, 176 Cal.App.3d 1191, 1194 (1986). Even though Cal. Civ. Proc. § 581(d) allows a dismissal "by the court" after the trial but before submission of the case if the plaintiff abandons the claim, the court in *D&J* did not focus on technicalities but instead regarded the dismissal as voluntary upon a clear, unequivocal and express intention to abandon an action, which could be demonstrated to the court by way of a motion to dismiss, stipulation of the parties, "or some other form of express intent on the record." *Id.* at 1195, *citing, Kaufman & Broad Bldg. Co. v. City & Suburban Mortg. Co.*, 10 Cal.App.3d 206, 213 (1970). The *D&J* court found that a mere oral request to the judge on the record was sufficient to make the dismissal "voluntary" for purposes of Cal. Civ. Code § 1717.

In the case at bar, at the commencement of trial, counsel for Plaintiff announced on the record to the effect that Plaintiff would not be proceeding on any of the claims as against the Sharmas. Although technically a court order of dismissal would have been necessary at that point to effect a dismissal under Fed. Rule Civ. Proc. 41(a)(2) as adopted

17

under Fed. Rule Bankr. Proc. 7041, like the California procedure discussed in *D&J*, this Court will not exalt technicalities over substance in view of the clear public policy underlying Cal. Civ. Code § 1717(b) as expressed by California courts. Therefore, the Court finds that the Sharmas were voluntarily dismissed and the Court is without authority under Cal. Civ. Code § 1717(b) to find a "prevailing party" as between Plaintiff and the Sharma defendants. Therefore, attorneys' fees as a part of costs recoverable by them will be denied.

Defendants may (1) submit a form of judgment consistent with this opinion and (2) schedule a separate hearing to determine DPS's costs and attorneys' fees, and costs only as to the Sharmas. This memorandum shall serve as findings in the case.

DATED: AUG 2 8 2006

_____
HONORABLE THEODOR C. ALBERT
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**411 West Fourth St., Ste. # 2074, Santa Ana, CA 92701-4593**

| In re          | Case No.: SA 02-16187 TA |
|----------------|---------------------------|
| QPS, INC,      | Adv. No. SA 04-01628 TA  |
| Debtor         | Chapter 11                |
| **NOTICE OF ENTRY OF JUDGMENT OR ORDER AND CERTIFICATE OF MAILING** ||

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1. You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(1)(a)(v), that a judgment or order entitled: **MEMORANDUM OF DECISION AFTER TRIAL**

   was entered on: **AUG 2 8 2006**

2. I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on: **AUG 2 8 2006**

Dated: **AUG 2 8 2006**

JON D. CERETTO
Clerk of the Bankruptcy Court

By: <u>Susan L. Kent</u>
Deputy Clerk

N:\CHONG\service lists\QPS.Adv.SA0401628-TA.wpd
7/2000

## SERVICE LIST

### Attorneys for David Gottlieb, Disbursing Agent for the Estate of QPS, Inc.
Daren R. Brinkman, Esq.
Laura J. Portillo, Esq.
Christina Erickson, Esq.
Brinkman Portillo, PC
4333 Park Terrace Drive, Suite 205
Westlake, Village, CA 91361

### Attorneys for Defendants Digital Peripheral Solutions, Inc., Rajeev Sharma and Priti Sharma
Kenneth J. Catanzarite, Esq.
Richard Verge de Dios, Esq.
Catanzarite Law Corporation
2331 West Lincoln Avenue
Anaheim, CA 92801

### United States Trustee
Michael Hauser, Esq.
Office of the U.S. Trustee
411 West Fourth Street, Suite 9041
Santa Ana, CA 92701